Catron, Ch. J.
delivered the opinion of the court.
This is a writ of error prosecuted from a decree of the chancery court at Rogersville, obtained by the Kenners against Smith and wife for several slaves. The first question is, what parts of the proceedings below can this court look to, to ground a decree of reversal upon? What constitutes part of the record' in a suit in equity, was adjudged in Mitchell vs. Nicholson this term, (a) and will not be repeated.. The writ of error operates as a bill of review on the face of the decree, which is demurred to, (1 Harr. Chan. 452: 2 Maddox, Ch. 537; the *207 errors complained of must be errors in law, appearing from the facts stated in Ae decree; which facts as stated, must he taken to be true.
By the xxxii rule of the chancery courts, the bills, answers and pleadings, are to be taken as part of the decree; and on the facts thus admitted to be true by the parties, errors in law may be assigned, if the chancellor has come to illegal conclusions on such facts, and wrongfully decreed.
The ground of relief set forth in the bill, and on which the chancellor decreed, is found in the two exhibits, being 'two deeds, dated 3d July, 1818; one from Lawrence S. Kenner to Judith Kenner, his mother, for a negro girl Eliza, purporting to be made for the consideration of five hundred dollars; the other, a deed of settlement for the same slave, with her increase, executed by Judith Ken-ner’to L. S. Kenner, vesting the title of-the slave, with her increase, in the said L. S. Kenner, for. the use of his mother Judith, and the use of Margaret Dugard, mother of said Judith, during their lives, or the life, of the longest liver; and then in remainder to Rodham Beverly Ken-ner and William Hinston Kenner, the infant children of L. S. Kenner, or either of them, should Judith Kenner so direct by her last will.
These two instruments were intended to form one transaction, and one title, and are so treated in the bill. Margaret Dugard and .Judith Kenner died, the latter in 1832, having had the slave Eliza in her possession from the date of the deeds to the time of her death; and in the meantime the slave Eliza had issue, the seven • children sued for, who remained also in the possession of Judith Ken-ner, up to the time of her death. Joseph W. Carden was the son-in-law of Judith Kenner, and who held two bonds on her for money; he had died -sometime before his mother-in-law, to wit: in 1827; Judith, his. wife, administered upon his estate, and afterwards intermarried with . Richard Smith, the other defendant. Sui't ivas brought *208 two ^on(^s by ^ adminislral°rs of Carden against Judith Kenner, in her lifetime* and at the November term of the Hawkins county court, 1832, a judgment was obtained for the sum of nine hundred and ninety dollars, besides costs. On this judgment, execution issued, and was levied on the slave Eliza and six of her children, who were sold and purchased in by Smith- at the execution sale.
. The bill alledges the judgment to have been fraudulent and void; and secondj that the purchase of the slaves was pretended by Smith, to have been made for the benefit of the complainants, competition prevented by this means at the execution sale, and the slaves purchased in at one tenth of their value.
These charges-, Smith and wife deny;' and the decree does not find how the fact is as to the validity of the judgment, or whether the sale was fair.
The decree adjudges that Smith and wife, by the pin-chase at execution sale, took the life estate in the slaves of Judith Kenner, who had no' interest in them save for life, and at her death, they properly belonged to the complainants, to whom they were ordered to be delivered up. The two title papers exhibited to the bill, and on which it is grounded, were only attested by one witness, have never been registered, nor can they be.
Joseph W. Carden was the creditor of Judith Kenner, and a judgment at law was recovered against her by his administrator and administratrix, through which they claim title as creditors to the slave, of whom Judith Kenner had had possession for more than five years before the execution was levied. This raises the question, whether by the act of 1801, ch. 25, sec. 2‘, the slaves were liable for debts. The act provides, where any loan of goods and chattels shall be pretended to have been made to any person, with whom possession shall have remained by the space of five years, “or where any reservation or limitation shall be pretended to have been made of a use of *209 property by way of condition, reversion, remainder, or otherwise, in goods or chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act; and that the absolute property is with the possession, unless said loan, reservation, or limitation of use or property were directed by will, or. by deeds in writing, proved and recorded,” &c.
Judith Kenner, by the deeds of the 3d July, 1818, took an estate for life, and the life of her mother, and then the complainants took the title to the slave Eliza and her increase in remainder; this remainder the statute cuts off. after five years possession holden by Judith Kenner, as to 'her creditors, and purchasers from her; and if Car-den’s administrators are bona fide creditors, and made a fair purchase, their title cannot be disturbed by this bill. The judgment at law is prima facie valid; the bill alledges it to 'be fraudulent and voidable in equity; this, the answer directly denies; and the chancellor does not find from the proofs, the fact that the judgment is fraudulent, or did he adjudge in reference thereto; but on the title to the slaves founded on the deed of the 3d July, 1818, decreed for the complainants, giving preference to the unregistered deeds over the creditor’s judgment.
In this, the court thinks he erred, and order the decree to be reversed, as to Richard Smith and wife, who prosecute the writ of error, but not as to J. W. R. Finley, who does not complain or assign errors.
The decree having been reversed, it is of course set aside as to Smith and wife; but this court cannot do more than reverse, as in case ¿of overruling a demurrer to a bill of review; leaving the cause open to a rehearing upon the pleadings and proofs; and the rule declared in Cotterel vs. Purchase, (1 Atk. 299), by Lord Hardwick, must be adopted by the chancellor on the cause being remanded; that is, it must be re-heard upon its whole merits; between *210 complainants and Smith and wife, as if the decree had been reversed upon a hill of review in the chancery court. (1 Harr. Ch. 141), and to this end it is remanded.
Decree reversed.

 See Mitchell vs. Nicholson, et al. ante. page.